## STATE OF FLORIDA v ARONSON

### Case No. 88-337 AC

Eleventh Judicial Circuit, Dade County

January 23, 1991

**APPEARANCES OF COUNSEL**

**Joni B. Braunstein,** Assistant Attorney General, for appellant.

**Benedict Paul Kuehne, Esquire,** for appellee.

Before LEVINE, FULLER, ESQUIROZ, JJ.

### OPINION OF THE COURT

LEVINE, J.

The State appeals from the order discharging the Defendant for a

violation of Florida Rule of Criminal Procedure 3.191 (speedy trial rule).

The Defendant was arrested for Driving Under the Influence (DUI) on May 23, 1987. The State appealed certain pretrial rulings, and the final mandate was returned by the appellate court on July 18, 1988. The case was then set for trial on September 6, 1988.

When the trial date was scheduled by the clerk, the defense attempted to subpoena Florida Highway Patrol (FHP) Trooper Isabella Brown as a defense witness for the trial. Service of subpoenas on law enforcement officers in this jurisdiction is generally obtained through the officer's particular department. Various police departments have agreed to accept service for their employees rather than divulging home addresses, recognizing the potential danger in revealing the home addresses of law enforcement officials in discovery proceedings. The defense complied with local discovery practice and did not ask Trooper Brown for her home address during her deposition. The trial subpoena was delivered to the FHP office.

The local Florida Highway Patrol office, however, refused to accept service of the trial subpoena for Trooper Brown, indicating that the Trooper was no longer employed by FHP. The defense then filed a motion requesting the home address of the Trooper from the state, for the purpose of serving her with a trial subpoena. On September 2, 1988, the trial court granted the motion, apparently without objection, and directed the state to provide the defense with the home address.

The state, however, did nothing to obtain the address or to contest the trial court's order. When the trial date came on September 6, the defense protested that they could not obtain the presence of an essential witness because the state had never complied with the order to produce the Trooper's home address. The trial court found that the state had indeed failed to comply with the order. The trial court again ordered the state to comply by providing the home address, and the case was rescheduled for trial. At the next trial date, September 19, 1988, the state had again failed to comply with the court's order to provide the home address. The state did not do anything to obtain the information, did not ask for any additional time to try, did not request an extension of the speedy trial rule, and did not appeal the original production order.

By chance, another FHP trooper was at the hearing on September 19, and told the parties that he believed Trooper Brown was deceased. No evidence was presented to support the statement. The defense then moved to dismiss the charges because of the alleged gross negligence of

50

the state in failing to comply with the court's order to produce the home address. The court set the matter for a hearing on the motion to dismiss and to confirm Trooper Brown's death.

The hearing on the motion was scheduled for November 2, 1988, beyond the speedy trial time provided for in Florida Rule of Criminal Procedure 3.191(g). The state failed to object or mention the speedy trial problem to the trial court at any time before the time limit expired. On November 2, the defense moved for discharge, which the court granted.

Florida Rule of Criminal Procedure 3.220(f) provides that the court may require such discovery to the parties as justice may require. The defense established to the trial court that Trooper Brown indeed had exculpatory evidence in the case. The defense needed to locate Brown to serve her with a subpoena for the trial. Since she no longer worked at FHP, the defense had to serve Brown at her home address. The home address, however, was not public information, and was not otherwise available to the defense. The trial court determined that the state had access to the information, and ordered it to produce the address to the defense. This is exactly the type of discovery order contemplated by the Florida Rule of Criminal Procedure 3.220(f).

In *State v Coney,* 294 So.2d 82 (Fla. 1973), the Supreme Court of Florida held that the state may be required to produce information to the defense even if that information is not in its actual possession. The Court noted that the underlying philosophy for pretrial discovery is fairness, plain and simple. *Id.* at 87. The trial court in the case *sub judice* acted fairly and within its authority. The state cites to a line of cases, typified by *Granade v Ader,* 530 So.2d 1050 (Fla. 3DCA, 1988), *rev. denied,* 541 So.2d 1172 (Fla. 1989), which hold that the conduct of a witness is not within the responsibility of the state. Thus, the failure of a witness to appear for deposition or to answer certain questions is not the fault of the state. These cases do not apply here, because the court merely ordered the state to produce information. The state was not ordered to produce or control a witness.

The trial court was also correct in continuing the trial and holding the state responsible for the delays in the case. The court first ordered the production of the home address on September 2. The state did not object to or appeal the order. It also failed to do anything to comply with the order. On September 6, the court continued the trial to give the state another opportunity to comply with the discovery order. The state again failed to comply. It simply did nothing. When the case came up for trial on September 19, the court scheduled the matter for

**51**

a hearing on possible sanctions. The speedy trial time had expired by this hearing.

A continuance is one of the possible sanctions for discovery violations enumerated in Florida Rule of Criminal Procedure 3.110(n). This sanction was explicitly approved in *State v Del Gaudio*, 445 SO.2d 605, 611 (Fla. 3DCA 1984), *rev. denied*, 453 So.2d 85 (Fla. 1984), even when the continuance results in the case being scheduled after the expiration date for the speedy trial rule. The trial court here properly continued the case after it was clearly established that the state did not even attempt to comply with the discovery order. The resulting dismissal on speedies is clearly the fault of the state. *Miketa v Cardonne*, 549 So.2d 1158 (Fla. 3DCA 1989). *See State v Brown*, 527 So.2d 209 (Fla. 3DCA 1988), *rev. denied*, 534 So.2d 394 (Fla. 1988).

This Court is also troubled by the failure of the assistant state attorneys assigned to the case to take even the simplest of actions to try to comply with the court's discovery order. Lawyers have a professional responsibility to follow the legal orders of the court or to follow appropriate procedures to challenge those orders. The Court understands that assistant state attorneys and assistant public defenders must cope with very heavy caseloads. It is inexcusable, however, to simply ignore a court order on two separate occasions. We urge the attorneys involved in this case to conduct themselves more responsibly in the future. AFFIRMED. FULLER, J., Concurs, ESQUIROZ, J., Dissents with opinion.

ESQUIROZ, J., dissenting.

I respectfully dissent. The state is not required to produce prosecution, much less defense, witnesses for deposition or for trial. *State v Carda*, 495 So.2d 912 (Fla. 3d DCA 1986); *State v Mesa*, 395 So.2d 242, 243 (Fla. 3d DCA 1981). *See also State v Jackson*, 436 So.2d 985, 986 (Fla. 3d DCA 1983); *State v Bonamy*, 409 So.2d 518, 519 (Fla. 5th DCA 1982); *State v Adderly*, 411 So.2d 981, 982 (Fla. 3d DCA 1982); *State v Roig*, 305 So.2d 836, 837 (Fla. 3d DCA 1974). Nor is the state required to "keep track" of important witnesses so as to be able to produce them for discovery or at trial, and a dismissal of the charges for the state's failure to do so is clearly inappropriate, at least absent a showing that the state is responsible for the witness' unavailability. *See Knight v State*, 373 So.2d 52, 53 (Fla. 4th DCA 1979). *See also Marshall v State*, 413 So.2d 872, 873 (Fla. 3d DCA 1982).

It is therefore my view that the trial court erred when it failed to charge two defense requested continuances to the defendant. The record in this case shows that the state announced ready for trial at

each trial setting, that the state did not intend to use the "missing" witness at trial but agreed that the witness could be "excluded," and that the continuances were requested by the defense solely for the purpose of locating the witness and subpoenaing her to testify as a defense witness at trial. As succinctly put in *State v Counce,* 392 So.2d 1029, 1031 (Fla. 4th DCA 1982): "The State has no duty to do for the defense work which the defense can do for itself."

These principles are particularly fitting to the circumstances of the present case because, at the hearing in which the court granted the second defense motion for an "excused" continuance (still well within the speedy trial time), the arresting officer (FHP Trooper Smith) announced that the witness in question (FHP Trooper Brown) had died two months earlier. While Trooper Smith was not under oath at the time that he reported Trooper Brown's death in open court, neither the accuracy nor veracity of Trooper Smith's representations were ever questioned by anyone at any time, but rather his report was accepted by all parties, and presumably by the court, without protest. Certainly, at that point, there was no longer any need to postpone the trial in order to give the defense a further opportunity to "locate" the missing witness.[1] And in light of the state's continued willingness to proceed, there was even less justification to charge the continuance to anyone other than the defense. *Cf. State v Rojas,* 508 So.2d 449, 450 (Fla. 3d DCA 1987).

Nonetheless, the defendant argues that the witness was one of two Florida Highway Patrol troopers who participated in her arrest and

---

[1] Nevertheless, in granting the second defense request for an "excused" continuance, the trial court instructed the state to find out the date of Trooper Brown's death, a tidbit of information which was largely irrelevant at that stage. When asked by the trial court about the cause of Trooper Brown's death, Trooper Smith answered that she believed that she died from drowning. Evidently, for purposes of judicial fiat, it mattered not at that point that the trooper had died a day earlier, or two or six months before, since obviously, there was no suggestion that the state was in any way responsible for her death. As the court held in State v Rojas, 508 So.2d 449, 450 (Fla. 3d DCA 1987):

> The state cannot be deemed responsible for its inability to produce a witness where the state learned belatedly of her incarceration in another state and her refusal to testify against the defendants. "There is no showing that the state, either through calculated official ignorance or deliberate intentional activity, was at fault for this failure to know the informant's whereabouts." Guzman v State, 498 So.2d 639 (Fla. 3d DCA 1986). Absent such a showing of fault or bad faith, the sanction of dismissal is unwarranted. Id.; State v Mena, 505 So.2d 681 (Fla. 3d DCA 1987). Moreover, the state generally does not have an obligation to produce witnesses for deposition. State v Rodriguez, 483 So.2d 751 (Fla. 3d DCA 1986).

State v Rojas, 508 So.2d at 450.

whose testimony was favorable and essential to the defense. It was apparently this argument that prompted the trial court, prior to learning of Trooper Brown's death, to enter an order compelling the state to produce the trooper's address so that she could be subpoenaed for trial.[2] But ordinarily a trial court has no authority to order the state to produce a witness for defense discovery or at trial, and the state's failure to comply with such an order affords no basis for the imposition of sanctions, such as exclusion of the witness' testimony, and much less dismissal. *See State v Filipowich,* 528 So.2d 511, 512 (Fla. 3d DCA 1988). Obviously, short of reporting Trooper Brown's death, the state could not have complied with an order compelling it to produce the dead trooper's address. And even though Trooper Smith did report the death at a time still well within the 90-day speedy trial period, the trial court continued the trial at the state's expense.

Even the state's failure to comply with discovery does not justify the trial court's refusal to charge the defendant with a defense requested continuance except under very narrow circumstances. There must be evidence of both (a) an actual state violation of the discovery rules and (b) that late or inadequate discovery was furnished "at a time which will not enable the defendant to make use of it in the preparation of his defense before the expiration of the speedy trial time limits. . ." *State v Brown,* 527 So.2d 209, 210 (Fla. 3d DCA 18988), *quoting from State v Del Gaudio,* 445 So.2d 605, 611, 612, (Fla. 3d DCA 1984). *See also Birden v Scheer,* 543 So.2d 330, (Fla. 4th DCA 1989); *Granade v Ader,* 530 So.2d 1050, 1051 (Fla. 3d DCA 1988). Evidently, the circumstances present in this case do not satisfy either element of the *Brown* and *Del Gaudio* exception. For even *Del Gaudio,* as quoted in *Granade,* recognizes that

> prejudice to the defendant is irrelevant where the State is not obliged to furnish the discovery in the first instance, and thus, the State's inaction or refusal does not constitute a discovery violation. In such a case, the imposition of any sanction against the State . . . is imper-

---

[2] Presumably, defense counsel knew what the trooper had to say, for he had taken her pre-trial deposition early in the case. One year did elapse in the interim, consumed by an unsuccessful interlocutory appeal taken by the state from a trial court's order suppressing evidence. After the mandate was issued, defense counsel attempted to effect service of a trial subpoena on Trooper Brown, but the return came back with the following notation: "Court Liaison at FHP refused to accept. Isabella Brown let go from the FHP six months ago. Unknown whereabouts." It was shortly thereafter that the trial court granted the defendant's Motion for Disclosure of Location and/or Address of Former FHP Trooper Isabella Brown, continuing the trial the first time for this reason, and the second time upon learning of Trooper Brown's death, but declining to charge either continuance to the defense.

missible. (Citation omitted) Similarly, where the State has disclosed the information to the extent possible, no sanction is warranted. (Citation omitted) *State v Del Gaudio,* 445 So.2d at 609, n. 4.

An earlier Florida case airs the same sentiments albeit using somewhat different logic. In *Counce v State, supra,* the defendant's attorney announced that he was not ready for the defendant's trial on extortion charges. He thus moved for a continuance because the prosecutor had failed to comply with a court order requiring the state to provide to the defense the names of any policemen present when an allegedly extortionate phone call was made by the defendant. The prosecutor announced that he did not know if any policemen had listened in on the conversation, and that the state did not have "in its possession" the information sought by the defense. The Fourth District Court of Appeal reversed the trial court's ruling charging the continuance to the state, reasoning:

> . . .Judge Price erred when he ruled that the continuance. . .should have been charged to the State. It is true that the State has a duty to furnish demanded discovery material *in its possession.* However, if the State does not have material demanded it cannot be guilty of violating Rule 3.220 (Emphasis in original). . . It is true that the State had the opportunity to obtain from the policemen involved in the case the information the defense desired. However, and this is crucial to the outcome of this case, the defense had an equal opportunity to obtain from the policemen the information it desired. The State has no duty to do for the defense work which the defense can do for itself. Such a principle is inherent in the following comment of the rules of criminal procedure by the Supreme Court in *Cooper v State,* 336 SO.2d 1133, 1138 (Fla. 1976):
>
>> '[The rules] were not designed to eliminate the onerous burdens of trial practice. Their purpose was to avail the defense of evidence *known* to the state so that convictions would not be obtained by the suppression of evidence favorable to a defendant, or by surprise tactics in the courtroom.' (Emphasis in original) *Counce v State,* 392 So.2d at 1031. Adding the caveat that the State is not permitted to evade the discovery rules by a "willful failure to learn that which is available to be learned," and that "lack of knowledge resulting from bad faith would not relieve the State of its duty to disclose to the defense material that is otherwise unavailable to the defense," the court concluded:
>
> We therefore hold that, in the situation here, the defense was able to obtain the information it demanded from the State by means other

than production by the State, and thus there was no duty on the State to obtain that information and furnish it to the defense. We further hold that if the defense neglects to obtain necessary information from available sources other than the State, any continuance the defense requests because it lacks such information is properly chargeable to the defense. *Counce v State,* 392 So.2d at 1031. *See also State v Merritt,* 394 So.2d 531, 532 (Fla. 3d DCA 1981) (. . . "if the dismissal was based upon the failure of the State to provide the defense with the correct address of a witness this too would be an insufficient ground for dismissal.")

In the final analysis, the dismissal of criminal charges[3] for the State's violation of court orders is a drastic sanction which should be employed only as a last resort, and not at all if lesser sanctions are adequate under the circumstances. *See e.g., State v Manderville,* 512 So.2d 326 (Fla. 3d DCS 1987); *State v Panice,* 488 So.2d at 656 (Fla. 3d DCA 1986); *State v Del Gaudio,* 445 So.2d at 612. Ad held in *State v Brown,* and quoted more recently in *Birken v Scheer:*

. . .[T]he alleged state derelictions, even if they existed, could not properly result in conferring the boon of outright dismissal upon her. Were the law otherwise, the rule pronounced in *Del Gaudio,* under which dismissal may *not* be imposed as a sanction for a discovery violation except in the most extraordinary circumstances directly relating to prejudice to the defendant, would be swallowed up by an exception under which the same violation would result in dismissal through another route, that of the speedy trial rule. We decline to so hold. *State v Brown,* 527 So.2d at 210, *quoted in Birken v Scheer,* 543 So.2d at 332.

I would therefore reverse the trial court's order discharging the defendant from prosecution under the speedy trial rule, and would remand the case for trial.

---

[3] Obviously, for all practical purposes, a dismissal of criminal charges has the same effect as a discharge from prosecution.